Brian S. Kabateck (SBN 152054)
bsk@kbklawyers.com
Shant Karnikian (SBN 285048)
sk@kbklawyers.com
Jerusalem F. Beligan (SBN 211258)
jfb@kbklawyers.com
Sheri R. Lalehzarian (SBN 346917)
sl@kbklawyers.com
**KABATECK LLP**
633 W. Fifth Street, Suite 3200
Los Angeles, CA 90071
Telephone: (213) 217-5000

James L. Simon (*pro hac vice*)
james@simonsayspay.com
**SIMON LAW CO.**
11 ½ N. Franklin Street
Chagrin Falls, Ohio 44022
Telephone: (216) 816-8696

Michael L. Fradin (*pro hac vice*)
mike@fradinlaw.com
**FRADIN LAW**
8401 Crawford Ave., Ste. 104
Skokie, IL 60076
Telephone: (847) 986-5889

*Attorneys for Plaintiffs and the Putative Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SHARON OLIVEIRA, and SIMONE FRANCO DE ANDRADE BOYCE, individually and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LANGUAGE LINE SERVICES, INC., a Delaware corporation, ON LINE INTERPRETERS, INC., a Delaware corporation, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 5:22-CV-02140-PCP <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASSES, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL, APPROVAL OF CLASS NOTICES, AND SETTING OF FINAL APPROVAL HEARING** <br><br> Judge:        Hon. P. Casey Pitts <br> Date:         July 18, 2024 <br> Time:         10:00 a.m. <br> Courtroom:  8 (4th Floor) |

**TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on July 18, 2024 in Courtroom 8 of the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA 95113, Plaintiffs Sharon Oliveira and Simone Franco de Andrade Boyce ("Named Plaintiffs"), individually, and on behalf of all others similarly situated will, and hereby do, respectfully move this Court to approve the Order Granting Preliminary Approval of the FLSA and Class Action Settlement (the "Preliminary Approval Order").[1] Subject to this Court's approval, the Preliminary Approval Order will have the effect of doing the following:

1.      Preliminarily approving the Settlement reached by Named Plaintiffs and Defendants as fair, reasonable, and adequate to the Class/Collective Members (defined in paragraph 2, below), subject to further consideration at the Final Approval Hearing after the distribution of the applicable notices to the Class/Collective Members, giving them an opportunity to opt in, opt out or object, as appropriate;

2.      Granting conditional certification of the following class and collectives for settlement purposes only:

      a. **The FLSA Collective:** Named Plaintiffs, Opt-In Plaintiffs, and all current and former employees employed by LLS or OLI as Interpreters, or similarly titled employees, in the United Staes (excluding Puerto Rico) during the FLSA Collective Period; and

      b. **The California Class:** Plaintiffs and all current and former employees employed by LLS or OLI as Interpreters, or similarly titled employees, with a home address in the State of California

---

[1] Unless otherwise stated, all capitalized terms used herein are defined and carry the same definition as the terms used in the Class and Collective Action Settlement Agreement and Release (the "Settlement Agreement," a true and correct copy of which is attached as **Exhibit 1** to the Declaration of Shant A. Karnikian ("Karnikian Decl.").

according to Defendants' records and who worked as non-exempt hourly-paid employees at any time during the California Class Period.

3.    Preliminarily approving the PAGA Gross Settlement Amount;

4.    Appointing Brian S. Kabateck, Shant A. Karnikian, Jerusalem F. Beligan and Sheri R. Lalehzarian of Kabateck LLP, James L. Simon of Simon Law Co., and Michael L. Fradin of Fradin Law as Class Counsel for the Class/Collective Members;

5.    Appointing Named Plaintiffs as the Class Representatives for the FLSA Collective and California Class;

6.    Approving the proposed Notices of Settlement and FLSA Opt-In Consent Form (attached as **Exhibits A – C** to the Settlement Agreement) which will be sent to Settlement Class Members for the purposes of, among other things, notifying them of the pendency of the Action and proposed Settlement, the schedule and procedure for the opportunity to opt-in or opt-out, and submitting objections to the proposed Settlement, as appropriate; and approving the method of dissemination set forth in the Settlement Agreement;

7.    Preliminarily enjoining, pending the outcome of the Final Approval Hearing, all Class/Collective Members from commencing, prosecuting or maintaining any claim already asserted in, and encompassed by, this Action, or commencing, prosecuting or maintaining in any court or forum, other than the Court, any claim, action or other proceeding that challenges, or seeks review of or relief from, any order, judgment, act, decision or ruling of the Court in connection with the Settlement Agreement; and

8.    Scheduling a Final Approval Hearing to consider final approval of the proposed Settlement, Class Counsel's Attorneys' Fees and Costs, Class Representative Enhancement Payments, and Settlement Administration Costs not

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

less than 134 days after the date of the order granting this Motion for Preliminary Approval.

The Parties' counsel have met and conferred, and Defendant does not intend to oppose this motion.

This motion is based upon this notice, the attached Memorandum of Points and Authorities, the declarations filed herewith, the Settlement Agreement and exhibits thereto, the other records and files in the Action, and such other matters as may be properly presented at or before the hearing.

DATED: June 8, 2024                Respectfully submitted,

**KABATECK LLP**

By: /s/ *Brian S. Kabateck*_____
    Brian S. Kabateck
    Shant A. Karnikian
    Jerusalem F. Beligan
    Sheri R. Lalehzarian

**SIMON LAW CO.**

By: /s/ *James L. Simon*_____
    James L. Simon

**FRADIN LAW**

By: /s/ *Michael L. Fradin*_____
    Michael L. Fradin

*Attorneys for Plaintiffs and the Putative Classes*

-3-

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND .....................................2

       A.    The procedural history in this Action. .........................................2

       B.    The extensive discovery, deposition, and discovery letter brief. ...........4

III.   SUMMARY OF THE MATERIAL TERMS OF THE SETTLEMENT ..........5

       A.    The Gross Settlement Amount and Settlement Classes. ......................5

       B.    The Net Settlement Amount to be distributed to Settlement Class
             Members, allocation between the Settlement Classes, and formula to
             determine distribution. ................................................................7

       C.    The notice to Settlement Class Members advising them of the
             Settlement and opportunity to opt-in, opt-out, or object. ...................11

IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .........12

       A.    The standard for settlement approval of collective and class actions. ..12

       B.    The Settlement is "fair, adequate, and reasonable" and should be
             preliminarily approved. ..............................................................13

             1.    Named Plaintiffs and their counsel have adequately represented
                   the Settlement Classes. .....................................................13

             2.    The Settlement was negotiated at arm's length. ........................15

             3.    The quality of relief to the Settlement Classes weighs in favor of
                   approval. .......................................................................15

                   (i)     The Settlement provides strong relief to Settlement Class
                           Members..............................................................16

                   (ii)    Continued litigation could entail substantial cost, risk,
                           delay and potential appeals. ...................................16

                   (iii)   The Settlement provides for an effective distribution of
                           proceeds to the Settlement Classes. ..........................19

                   (iv)    The terms of the proposed award of attorneys' fees,
                           including timing of payment, also support settlement
                           approval...............................................................19

                   (v)     The Parties have no other agreements pertaining to the
                           Settlement............................................................20

             4.    The Settlement treats all Settlement Class Members equitably..20

V.     THE SETTLEMENT CLASSES MEET ALL THE REQUIREMENTS OF

i

CONDITIONAL CERTIFICATION AND RULE 23 ...................................................21

    A.    Conditional certification under the FLSA has been satisfied.................21

    B.    The Rule 23 requirements are met.........................................................22

        1.    Rule 23(a)(1) – Numerosity .............................................23

        2.    Rule 23(a)(2) – Commonality ...........................................23

        3.    Rule 23(a)(3) – Typicality................................................23

        4.    Rule 23(a)(4) – Adequacy ................................................24

        5.    Rule 23(b) – Predominance and Superiority..............................24

VI.    CONCLUSION.................................................................................................25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*Altamirano v. Shaw Indus., Inc.*,
  No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015)..................20

*Boyd v. Bank of Am. Corp.*,
  No. 13-cv-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014).........21

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*,
  No. 5-cv-04456-PJH, 2018 WL 6727825, at *5 (N.D. Cal. Dec. 21, 2018)..........22

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018)..................................................22

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)..................................................12

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) ...............................................23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...........................................23, 24, 25

*Hudson v. Libre Technology Inc.*,
  No. 3:18-cv-1371-GPC-KSC, 2019 WL 5963648, at *3 (S.D. Cal. Nov. 13, 2019)
  ............................................................................12, 21

*In re Cooper Cos. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ...............................................23

*In re Paxil Litigation*,
  212 F.R.D. 539 (C.D. Cal. 2003) ...............................................24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895
  F.3d 597, 611 (9th Cir. 2018)..................................................13

*In re Volkswagen*,
  895 F.3d at 611 ...............................................................15

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)..................................................16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010)................................................................12

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................13

*Pederson v. Airport Terminal Servs.*,
  No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) ..................15

*Sadowska v. Volkswagen Grp. of Am.*,
  No. CV 11-00665, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013)...............20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................12, 21, 24

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S.Ct. 1036 (2016). ...........................................................................25

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ...................................................................25

*Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*,
  173 F.3d 713 (9th Cir. 1999) ...................................................................23

*Wershba v. Apple Computer, Inc.*,
  91 Cal.App.4th 224 (2001) .....................................................................16

**Other Authorities**
29 U.S.C. § 216(b).........................................................................................21
Cal. Lab. Code § 226.......................................................................................3
California Business & Professions Code § 17200, et seq. ...........................2, 3
California Code of Civil Procedure § 1542.......................................................11
Fed. R. Civ. P. 23(a)................................................................................22, 23
Fed. R. Civ. P. 23(b)(1), (2), or (3).................................................................24
Fed. R. Civ. P. 23(c)(2)(B).............................................................................22
Fed. R. Civ. P. 23(e)..............................................................................passim
Fed. R. Civ. P. 23(e)(2)(C)......................................................................15, 20
Fed. R. Civ. P. 23(h)......................................................................................19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

1

## I.    INTRODUCTION

Plaintiffs Sharon Oliveira ("Plaintiff Oliveira") and Simone Franco de Andrade Boyce ("Plaintiff Boyce," collectively, "Named Plaintiffs") and Defendants Language Line Services, Inc. ("LLS") and On Line Interpreters, Inc. ("OLI") (LLS and OLI may be referred to as "Defendants," collectively with Named Plaintiffs, the "Parties") have finalized a proposed class settlement that is ready to undergo the court-approval process.[1] The Parties seek to conditionally certify a collective and class for settlement only: (1) a nationwide FLSA Collective; and (2) a California Class. Subject to this Court's approval, Defendants agree to pay a Gross Settlement Amount of $3,725,000 to settle the claims of Named Plaintiffs and the Settlement Classes. The Settlement resolves the claims of Named Plaintiffs and approximately 8,141 FLSA Collective Members and 1,516 California Class members.

The Settlement satisfies all criteria and falls well within the range of preliminary approval. Plaintiffs' counsel, having resolved many employment class actions, believes the Settlement provides strong relief to the Settlement Classes and is worthy of this Court's approval. It provides guaranteed relief for Settlement Class Members without further risks and delay of litigation and conserves the time and resources of not only the Parties, but also this Court. Accordingly, the Parties respectfully request this Court to preliminarily approve the Settlement and grant a Preliminary Approval Order that does the following: (1) preliminarily approves the Settlement as fair, reasonable, and adequate; (2) conditionally certifies the FLSA Collective and California Class for settlement only; (3) preliminarily approves the PAGA Gross Settlement Amount; (4) appoints Plaintiffs' attorneys as Class Counsel for the Class/Collective Members; (5)  appoints Named Plaintiffs as the Class Representatives for the FLSA Collective and California Class; (6) approves the

---

[1] A copy of the fully executed Class and Collective Action Settlement Agreement and Release, including its exhibits (the "Settlement Agreement"), is attached as **Exhibit 1** to the Declaration of Shant A. Karnikian ("Karnikian Decl."). Unless otherwise stated, all capitalized terms used herein are defined and carry the same definition as the terms used in the Settlement Agreement.

Notices of Settlement and Opt-In Consent Forms (attached as **Exhibits A – C** to the Settlement Agreement) to be disseminated to the Class/Collective Members in the form and manner proposed by the Parties as set forth in the Settlement Agreement; (7) preliminarily enjoins all Class/Collective Members from commencing, prosecuting or maintaining any claim already asserted in, and encompassed by, this case, or commencing, prosecuting or maintaining in any court or forum, other than in this Court, any claim, action or other proceeding that challenges, or seeks review of or relief from, any order, judgment, act, decision or ruling of the Court in connection with the settlement of this case; and (8) sets a hearing date and schedule for the Final Approval Hearing and consideration of Class Counsel's motion for award of fees, costs, expenses, service awards, and administration costs not less than 134 days after the date of the order granting this Motion for Preliminary Approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The procedural history in this Action.

Defendants employ Interpreters who provide translation services for a multitude of purposes throughout the United States, including California. Defendants treat their Interpreters, including Named Plaintiffs, as nonexempt employees and pay them an hourly wage.

Plaintiff Oliveira initiated the Action by filing the original Complaint on April 18, 2022 against LLS, alleging three claims for relief under the FLSA, seeking alleged unpaid minimum and overtime wages in connection with alleged "off-the-clock" work, unpaid rest breaks, and unreimbursed business expenses on her own behalf and on behalf of a nationwide FLSA collective of similarly-situated Interpreters. Additionally, the initial Complaint alleged three similar claims under the Ohio Minimum Fair Wage Standards Act. The original Complaint also included claims for violation of California Labor Code sections 200, 201-203, 226.7, 218, 510, 512, 1194, 2802; Industrial Welfare Commission Order No. 4-2001 ("Wage Order No. 4"); and California Business & Professions Code § 17200, et seq. (the "UCL"),

in connection with Defendants' alleged failure to pay all earned minimum and overtime wages, failure to provide compliant meal periods and rest breaks, failure to furnish accurate wage statements, failure to reimburse employees for reasonable and necessary business expenses, failure to pay all wages timely upon separation of employment, and violations of the UCL on behalf of Plaintiff Oliveira and a California class of similarly-situated Interpreters.

On November 16, 2022, Plaintiff Boyce filed a notice of violation of the PAGA with the LWDA. The PAGA claims are premised on the same alleged violations as the California claims outlined in the initial Complaint along with the added violation of failure to provide accurate wage statements (Cal. Lab. Code § 226).

On December 12, 2022, Plaintiff Boyce initiated a separate action in the Northern District (Case No. 5:22-cv-08076-BLF) ("Boyce action") against LLS and OLI, alleging nine causes of action under the FLSA and California law for unpaid minimum wage and overtime wages, unpaid meal and rest breaks, "off-the-clock" work, kickbacks, unreimbursed business expenses, untimely payment of wages upon separation, inaccurate wage statements, and violations of California Business & Professions Code § 17200, *et seq*. (the "UCL").

On December 22, 2022, the Parties filed a joint motion to relate the Boyce action and Oliveira action. The order was granted on December 23, 2022. On January 23, 2023, Named Plaintiffs filed a First Amended Complaint (the Operative Complaint) against Defendants for the same violations above, and adding claims for penalties pursuant to PAGA.

On April 10, 2023, the Parties participated in a full day mediation with Steven Serratore. Although the case did not settle, mediation discussions continued. The Parties engaged in formal discovery for months, until agreeing to participate in a second mediation with Lynn Frank. The mediation with Ms. Frank took place on February 17, 2024 and lasted until 7:00 p.m. At the end of the long ten-hour day, the Parties reached a settlement later memorialized in the Settlement Agreement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.**    **The extensive discovery, deposition, and discovery letter brief.**

In an effort to reach a settlement in this lawsuit, and prior to the initial mediation on April 10, 2023, Defendants' counsel and Plaintiffs' counsel had numerous phone calls and meet and confer communications. Additionally, the Parties engaged in significant informal discovery including, but not limited to, Defendants' production of policies and procedures, production of the timekeeping and payroll records for 20% of Interpreters nationwide going back to April 2020 and 20% of California-based Interpreters going back to April 2018, and timekeeping, personnel, and payroll records for the Named Plaintiffs and Opt-In Plaintiffs.

Plaintiffs, in turn, produced this sampling to their retained experts to analyze and estimate damages to the balance of the Class/Collective Members. Plaintiffs' experts provided Plaintiffs' counsel a damages analysis. During the mediation, the Parties' counsel discussed their positions on the likelihood of conditional and class certification, liability and damages. This discussion provided each side with information necessary to evaluate the likelihood of conditional and class certification, Defendants' potential exposure, and risks of continued litigation, including denial of conditional and/or class certification, losing on the merits, and potential appeals.

Because the case did not settle at the first mediation, the Parties engaged in formal discovery from May 2023 to December 2023, which included an in-person deposition as well as written discovery such as requests for production of documents, form and special interrogatories, and requests for admission. Further, on December 5, 2023, Plaintiffs filed a discovery letter brief requesting contact information for potential California class members in order to distribute Belaire-West notices. The Court granted Plaintiffs' request on December 22, 2023. Soon after, the Parties agreed to participate in a second mediation, which took place on February 17, 2024 with Lynn Frank. After a mediator's proposal, the case settled.

Throughout this litigation, Plaintiffs and their counsel expended substantial time, effort, energy, and expenses in order to achieve the best recovery possible for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

the Settlement Classes. Plaintiffs' counsel had to balance the amount being offered in the Settlement against the risks of continued litigation, which could result in both sides incurring substantial attorneys' fees and litigation and expert costs, delay, losing on the merits, and appeals. Plaintiffs' counsel believe they were in a position to weigh the risks and benefits of continued litigation at the time of the second mediation and believe—based on their experience—the best alternative for the Class/Collective Members was to settle the Action for the Gross Settlement Amount of $3,725,000.

Below, Plaintiffs provide additional information about the settlement benefits, the class releases, why the settlement is fair, adequate, and reasonable, and why the FLSA Collective and California Class should be certified. Given the strength of the Settlement and the certifiability of the Class and Collective, Plaintiffs respectfully request this Court to preliminarily approve the Settlement, conditionally certify the FLSA Collective and California Class, appoint Named Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel for the Class/Collective Members, approve the Class Notices and Consent Form, and set a schedule for the Final Approval Hearing.

## III.   SUMMARY OF THE MATERIAL TERMS OF THE SETTLEMENT

### A.   The Gross Settlement Amount and Settlement Classes.

Defendants agree to pay a Gross Settlement Amount of $3,725,000 to settle this Action. *See* Settlement Agreement ¶ 25. From the Gross Settlement Amount, and subject to this Court's approval, the following will be paid: (1) settlement payments to Settlement Class Members, which will include penalties, liquidated damages, interest, and employee withholding on any portion of the payments to the Settlement Class Members that constitute wages; (2) Approved Service Awards; (3) Approved Administration Costs; (4) Approved Attorneys' Fees and Costs; (5) payments to the Aggrieved Employees; and (6) payments to the LWDA. *Id.*

The Gross Settlement Amount shall be allocated as follows: One Million Five Hundred Fifty Seven Thousand Eight Hundred Thirteen Dollars And Thirty Three

Cents ($1,557,833.33) to settle the claims of the California Class in connection with the California Released Claims ("California Gross Settlement Amount");   Two Hundred Twenty-Five Thousand Dollars and No Cents ($225,000.00), taken out of the California Gross Settlement Amount, to settle the PAGA claims of the Aggrieved Employees ("PAGA Gross Settlement Amount"); and Eight Hundred Five Hundred Thousand Dollars and No Cents ($800,500.00) to settle the claims of the FLSA Collective in connection with the FLSA Released Claims ("FLSA Gross Settlement Amount"). *Id.* ¶ 67.

> The Settlement will provide relief to the following Settlement Classes:
> **The FLSA Settlement Collective:** Named Plaintiffs, Opt-In Plaintiffs, and all current and former employees employed by LLS or OLI as Interpreters, or similarly titled employees, in the United States (excluding Puerto Rico) from April 18, 2020 through April 1, 2024 and who opt-in the Action after notice is issued. *Id.* ¶ 19, 21, 23.

> **The California Settlement Class:** Named Plaintiffs and all current and former employees employed by LLS or OLI as Interpreters, or similarly titled employees, with a home address in the State of California who worked as non-exempt hourly-paid employees from April 18, 2019 through April 1, 2024 and who do not opt-out after receiving notice. *Id.* ¶ 6, 7, 9.

> **Aggrieved Employees:** All current and former employees employed by Defendants as Interpreters in the State of California as non-exempt or hourly-paid employees at any time from November 16, 2021 through April 1, 2024 (the "PAGA Period"). *Id.* ¶ 2, 37.

If this Court grants conditional certification and preliminary approval of the Settlement, the members of the FLSA Collective will be provided 60 days to opt-in and will be provided reminder postcards, and for those collective members for whom Defendants have email addresses, reminder emails to opt-in 21- and 35- calendar days after the initial notices are sent. *Id.* ¶ 62(b)(vi). The members of the California Class will be provided 60 days to opt-out. The California Class will also be provided an opportunity to object to the Settlement.[2] *Id.* ¶ 62(c)(i).

---

[2] Because members of the FLSA Settlement Collective are only bound by the Settlement if they opt-(continued…)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

**B.    The Net Settlement Amount to be distributed to Settlement Class Members, allocation between the Settlement Classes, and formula to determine distribution.**

At the final approval stage, Plaintiffs' counsel will petition the Court to award Plaintiff Oliveira and Plaintiff Boyce service awards in the amount of $8,000 each, and Opt-In Plaintiffs a service award of $1,500 each, for a total of $25,000 for the work and risks they incurred in prosecuting this Action. At the final approval stage, Plaintiffs' counsel will also petition the Court to approve attorneys' fees in the amount of $1,241,666.67 (or 1/3 of the Gross Settlement Amount) for the substantial work and risks they undertook prosecuting this Action and will seek reimbursement of their actual out-of-pocket litigation expenses not to exceed $50,000. The Parties' counsel have selected a Settlement Administrator to administer the Settlement and, at the final approval stage, will petition the Court to reimburse the Settlement Administrator for its services in an amount not to exceed $50,000. The Parties also agreed to allocate $225,000 of the Gross Settlement Amount towards the PAGA payment (75% of which will be paid to the LWDA and 25% will be distributed in payments to the Aggrieved Employees) and will petition the Court to approve this amount.

After the class representative service awards ($25,000), attorneys' fees and costs ($1,291,666.67), costs of claims administration ($50,000) and payments to the Aggrieved Employees and payment to the LWDA ($225,000) have been deducted from the Gross Settlement Amount, the remaining amount of $2,133,333.33 shall be divided as follows: $1,332,833.33 shall be allocated to the California Settlement Class, $800,500.00 shall be distributed to the FLSA Settlement Collective.

The Parties further agree the Net Settlement Amount and the PAGA payment be distributed as follows:

**California Settlement Amount:** The California Net Settlement Amount will

---

in to the Settlement, no right to object to the Settlement is necessary or appropriate as individuals who do not opt-in are free to pursue their own claims. Allowing such individuals a right to object would allow a non-party to the settlement to hold up the settlement for others who have opted-in.

be allocated on the basis of each California Settlement Class Member's total California PT Workweeks and California FT Workweeks. Each California PT Workweek will be equal to one (1) California Settlement Share. Each California FT Workweek will be equal to one and one-half (1.5) California Settlement Shares. The Settlement Administrator will add together the total California Settlement Shares for all California Settlement Class Members and the resulting sum will be divided into the California Net Settlement Amount to reach a per-California-Settlement-Share dollar figure. That figure will then be multiplied by each California Settlement Class Member's number of California Settlement Shares to determine the California Settlement Class Member's California Settlement Award.

Each California Settlement Award shall be allocated as follows: 20% will be considered wages; 40% will be considered interest on unpaid wages; and 40% will be considered non-wages, including liquidated damages, Labor Code penalties, PAGA penalties, interest, attorney's fees, and costs. The amounts paid as wages shall be subject to all tax withholdings customarily made from an employee's wages and all other authorized and required withholdings and shall be reported on IRS Form W-2. The Settlement Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to 20% of each California Settlement Award distributed, and Defendants shall pay the employer's share of all required FICA and FUTA taxes on such amounts. The Settlement Administrator shall calculate the employer share of taxes and provide Defendants with the total employer tax contributions within five (5) days after the final Settlement Award calculations are approved, as set forth in Paragraph 68(e). Defendants shall deposit the calculated employer tax contributions into the Qualified Settlement Fund within seven (7) days after the Settlement Administrator provides Defendants with the amount of the total employer tax contributions due. Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities. The remaining 80% of each California

Settlement Award shall be treated as interest on unpaid wages, non-wage liquidated damages, penalties and interest, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes.

**FLSA Nationwide Settlement Amount:** The FLSA Settlement Amount will be allocated on the basis of each FLSA Settlement Collective Member's total FLSA PT Workweeks and FLSA FT Workweeks. Each FLSA PT Workweek will be equal to one (1) FLSA Settlement Share.  Each FLSA FT Workweek will be equal to ten (10) FLSA Settlement Shares. The Settlement Administrator will add together the total FLSA Settlement Shares for all FLSA Settlement Collective Members and the resulting sum will be divided into the FLSA Settlement Amount to reach a per-FLSA-Settlement-Share dollar figure. That figure will then be multiplied by each FLSA Settlement Collective Member's number of FLSA Settlement Shares to determine the FLSA Settlement Collective Member's FLSA Settlement Award.

Each FLSA Settlement Award shall be considered wages and shall be subject to all tax withholdings customarily made from an employee's wages and all other authorized and required withholdings and shall be reported on IRS Form W-2. The Settlement Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to each FLSA Settlement Award distributed, and Defendants shall pay the employer's share of all required FICA and FUTA taxes on such amounts. The Settlement Administrator shall calculate the employer share of taxes and provide Defendants with the total employer tax contributions within five (5) days after the final Settlement Award calculations are approved, as set forth in Paragraph 68(e). Defendants shall deposit the calculated employer tax contributions into the Qualified Settlement Fund within ten (10) days after the Settlement Administrator provides Defendants with the amount of the total employer tax contributions due. Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities.

**PAGA Settlement Amount:** Seventy-five percent (75%) of the approved PAGA Gross Settlement Amount will be paid to the LWDA. The remaining twenty-five percent (25%) (the "Net PAGA Amount") will be distributed on the basis of the Aggrieved Employee's total PAGA Pay Periods. The Settlement Administrator will add together the total PAGA Pay Periods worked by all Aggrieved Employees and the resulting sum will be divided into the Net PAGA Amount to reach a per-pay-period dollar figure. That figure will then be multiplied by each Aggrieved Employee's number of PAGA Pay Periods to determine the Aggrieved Employees' PAGA Settlement Award.

Each PAGA Settlement Award shall be allocated as follows: 100% will be considered penalties and interest. The Settlement Administrator shall issue an IRS Form 1099 for the PAGA Settlement Awards. Aggrieved Employees assume full responsibility and liability for any taxes owed on their PAGA Settlement Payments.

**The limited scope of release for Settlement Class Members and general release for Named Plaintiffs and Opt-In Plaintiffs.**

In exchange for the benefits provided under the Settlement, the Settlement Class Members will release claims based on the Settlement Class(es) of which they are a part. This is outlined in detail in section III of the Settlement Agreement, but on a broad level, individuals who opt in to the FLSA Settlement Collective will release FLSA claims that were or could have been pled based on the factual allegations in the Operative Complaint or any preceding complaint filed in this Action; individuals who do not exclude themselves from the California Settlement Class will release claims that were or could have been pled based on the factual allegation in the Operative Complaint or any preceding complaint filed in this Action; and the Aggrieved Employees will release all claims under the PAGA for civil penalties for Labor Code violations identified, pleaded, or otherwise set out in the PAGA Notice and/or the Operative Complaint or any preceding complaint filed in this Action during the PAGA Period. Named Plaintiffs will execute a general release of all

claims, whether known or unknown to them at the time the Settlement Agreement was executed. Named Plaintiffs' release will also include a waiver pursuant to California Code of Civil Procedure § 1542. The release will not include, however, claims that cannot be waived and released as a matter of law. Opt-In Plaintiffs will execute a release of all FLSA released claims as well as any claims which relate to the alleged failure to properly pay wages or overtime.

### C. The notice to Settlement Class Members advising them of the Settlement and opportunity to opt-in, opt-out, or object.

If preliminary approval is obtained, Defendants will provide the Settlement Administrator with the contact information of all Class/Collective Members. The Settlement Administrator will disperse two separate Notice Packets: (1) one packet to members of the FLSA Collective who are not also members of the California Class giving them notice of the Settlement and 60-days to opt in to the FLSA Settlement Collective; and (2) a separate packet to members of the California Class giving them notice of the Settlement and 60-days to opt in to the FLSA Settlement Collective (if they were employed as Interpreters during the FLSA Collective Period), and 60-days to object to the California Settlement or to opt out of the California Settlement Class by submitting a written request for exclusion. California Class Members within the PAGA Period will also be advised of the PAGA settlement.

To ensure as many FLSA Collective Members receive compensation for the alleged violations in the Operative Complaint, the Parties agreed to provide all members of the FLSA Collective who have not yet opted in to the Action two reminder notices: (1) a reminder postcard, and for those collective members for whom Defendants have provided email addresses, a reminder email, 21 calendar days after the initial notices are sent; and (2) a reminder postcard, and for those collective members for whom Defendants have provided email addresses, a reminder email, 35 calendar days after the initial notices are sent. To further facilitate a high opt-in rate, Defendants management will send a communication to currently-employed members

of the FLSA Collective and California Class informing them that no one will be retaliated against for participating, and providing contact information to the Settlement Administrator. The Parties also agreed that all FLSA Collective Members will have the option of opting-in through regular mail or electronically.

Aside from opting-in or opting-out and/or objecting (for California Class Members only), the Notice Packets will notify Class/Collective Members of, among other things, the following: (1) the amounts to be deducted from the Gross Settlement Amount for reimbursement of attorneys' fees and costs, Named Plaintiff and Opt-In Plaintiff Service Awards, and Settlement Administration Costs; and (2) for each of the foregoing actions, the manner and deadline date for opting-in, opting-out and/or objecting (where applicable). If the Settlement is preliminarily approved, the Notice Packets will also inform Class/Collective Members of the date of the Final Approval Hearing.

## IV.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    The standard for settlement approval of collective and class actions.

Class action settlements must be approved by the trial court. *See* Fed. R. Civ. P. 23(e). "The Ninth Circuit has a strong judicial policy that favors settlements in class actions." *Hudson v. Libre Technology Inc.*, No. 3:18-cv-1371-GPC-KSC, 2019 WL 5963648, at *3 (S.D. Cal. Nov. 13, 2019) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). If, however, the parties reach a settlement before class certification, "the court must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). A majority of courts have determined a hybrid Rule 23 and FLSA action is proper. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 472 (E.D. Cal. 2010).

The approval process is twofold: first, this Court must determine whether the proposed settlement is "fair, adequate, and reasonable"; and if so, determine if the Settlement Classes meet the requirements for conditional certification and class

certification under Rule 23. *Id*.

**B.    The Settlement is "fair, adequate, and reasonable" and should be preliminarily approved.**

"If the propos[ed] [settlement] would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i)   the costs, risks, and delay of trial and appeal;
> > (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

The "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). This Court's primary function is to determine that the Settlement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

As discussed in each factor below, the proposed Settlement is fair, and the Rule 23(e)(2) factors weigh in favor of approving it.

**1.    Named Plaintiffs and their counsel have adequately represented the Settlement Classes.**

Named Plaintiffs have diligently represented the Class/Collective Members.

*See* Declaration of Sharon Oliveira ("Oliveira Decl.") ¶¶ 12-14, 19-20; and Declaration of Simone Boyce ("Boyce Decl.") ¶¶ 12-14, 18-19. They actively participated by providing documentation, submitting to interviews, answering questions asked by their counsel to fill in factual gaps, and participating in depositions. Oliveira Decl. ¶¶ 15-17; and Boyce Decl. ¶¶ 15-16. Throughout this action, Named Plaintiffs have remained in contact with their counsel, stayed apprised of the litigation, and have acted with the interests of the Class/Collective Members in mind.

Plaintiffs' counsel has also adequately represented the Class/Collective Members. They have vigorously prosecuted the Action, having filed multiple complaints to preserve and maximize the claims of the Class/Collective Members, obtained substantial informal discovery before the mediation, propounded and responded to formal discovery, retained an expert to review and analyze sample time and payroll records, drafted and filed a discovery letter brief, prepared two detailed and comprehensive mediation briefs, attended two full-day mediations, negotiated a long-form settlement agreement, retained a Settlement Administrator, and prepared and finalized this Motion and supporting documents, including the notices to the Class/Collective Members. This does not include the time they will have to expend working with the Settlement Administrator on issuing the notices and fielding inquiries from Class/Collective Members. Plaintiffs' counsel also interviewed Named Plaintiffs, obtained documents from them, and met and conferred with Defendants' counsel on several occasions. Plaintiffs' counsel also advanced litigation expenses and expert costs on behalf of the Class/Collective Members, with no assurance that those expenses would be reimbursed. Finally, Plaintiffs' counsel has successfully litigated many wage-and-hour class actions, and has brought that experience and knowledge to bear on behalf of the Class/Collective Members. Accordingly, this factor weighs in favor of preliminary approval.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

### 2. The Settlement was negotiated at arm's length.

The Settlement was reached as a result of the extensive arm's-length negotiations facilitated on two occasions by experienced mediators, Steven Serratore and Lynn Frank. Despite a full-day session with Mr. Serratore on April 10, 2023, the Parties were not able to reach an agreement. The Parties remained in contact with Mr. Serratore, who assisted in continued discussions of settlement. After engaging in formal discovery and the Court granting Plaintiffs' discovery letter brief regarding Belaire West notices, the Parties attended a second mediation with Ms. Frank on February 17, 2024. After a 10-hour mediation, Ms. Frank made a mediator's proposal which the Parties accepted. Since that time, the Parties have continued to negotiate the terms of their long-form settlement and accompanying notice documents through several iterations over four months. "[T]he involvement of a neutral or … facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee's Notes; accord *Pederson v. Airport Terminal Servs.*, No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (finding the oversight "of an experienced mediator" reflected noncollusive negotiations). In sum, this Court can be confident of the arm's length nature of the process and that the Settlement was not the product of collusion.

### 3. The quality of relief to the Settlement Classes weighs in favor of approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Notes; *In re Volkswagen*, 895 F.3d at 611.

### (i)    The Settlement provides strong relief to Settlement Class Members.

The relief to be provided to Settlement Class Members is strong. Defendants are offering a Gross Settlement Amount of $3,725,000 to settle their alleged violations as set forth in the Operative Complaint. This Settlement provides substantial and immediate benefits to Settlement Class Members, and readily satisfies the Rule 23 standard of being fair, reasonable, and adequate, especially when measured against the risks of further litigation.

### (ii)    Continued litigation could entail substantial cost, risk, delay and potential appeals.

Almost all class actions involve high levels of cost, risk, and time, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). "A[] central concern [when evaluating a proposed class action settlement] … relate[s] to ***the cost and risk involved in pursuing a litigated outcome***." Fed. R. Civ. P. 23(e), 2018 Advisory Committee's Notes (emphasis added). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved had plaintiffs prevailed at trial." *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 246 (2001) (citing *Linney*, 151 F.3d at 1242). Rather, "the test is… whether the settlement is reasonable under all of the circumstances." *Id.* at 250. "A settlement need not obtain 100 percent of the damages sought in order to be fair and reasonable. [Citations omitted] … Compromise is inherent and necessary in the settlement process. Thus, even if 'the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated,' this is no bar to a class settlement because 'the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation.'" *Id.*

While Plaintiffs believe in the strength of their claims, the risks to Settlement

Class Members of continued litigation were significant. Defendants argued that the "gap time" claims of the FLSA Collective for minimum wages were nonexistent and had little value, if any. Plaintiffs' counsel agreed the "gap time" claims as pled were subject to attack, but had this Action not settled, Plaintiffs' counsel was going to amend the Operative Complaint and replace the "gap time" claims with various breach-of-contract claims. Defendants argued that any time worked off-the-clock was de minimis and that Named Plaintiffs' accounts of such time would not be supported by other interpreters. Defendants argued that unpaid breaks about which Named Plaintiffs complained were subject to various defenses under the FLSA, and were not prohibited by California law. Defendants argued that due to the high rate of pay for interpreters, any failure to reimburse for expenses would not bring interpreters below the minimum wage in any workweek, and thus would not ever violate the FLSA. Defendants further argued that any required expense reimbursement under California law was much less than what was alleged by Named Plaintiffs. Defendants also argued that the case was not appropriate for class or collective treatment due to differences among class/collective members as to whether they experienced the practices about which Named Plaintiffs complained, and/or whether they suffered any damage even if they were subjected to the same policies. In addition, Defendants argued that the PAGA claims would be unmanageable at trial. Defendants made clear that it intended to bring a motion for summary judgment on many of these issues, and Plaintiffs intended to oppose said motion. Plaintiffs' discovery letter brief was granted, and therefore Plaintiffs' counsel were prepared to send Belaire West notices to all California Class Members.

Thus, had this case not settled, this Action was poised for contentious pre-certification law-and-motion work which would have consumed a substantial amount of attorney time, court time, and depending on the motion and the result, potential appeals to the Ninth Circuit. Thus, continued litigation would have been risky, protracted, and costly for both sides.

Were the case to continue, the Parties would have to engage in briefing conditional and class certification motions, briefing a Rule 23(f) appeal after the Court's certification ruling, followed by summary judgment, *Daubert* motions, motions in limine, a possible decertification motion, and then trial. Each stage would have added risk and unnecessarily imposed delay before relief could be provided to Settlement Class Members. As to the merits of the case, Plaintiffs believe they ultimately would have been able to demonstrate that Settlement Class Members were not paid all wages due, were not properly reimbursed, and did not receive the proper breaks. However, Plaintiffs' counsel also recognized, based on their experience in other class litigation, that their case could fail on liability, or at least be whittled down. For example, Defendants vigorously contended that the pre- and post-shift work Named Plaintiffs and Class/Collective Members allegedly performed, if any at all, were de minimis and could not have taken 15-minutes per shift.

Even if Plaintiffs prevailed on these issues in trial, an appeal would likely follow, taking additional years to resolve. Again, while Plaintiffs believe the case they are pursuing on behalf of the Settlement Classes is strong, all cases, including this one, are subject to substantial risk. Plaintiffs' theories of liability, while sound in their view, remain subject to attack from Defendants in a disputed conditional and class certification setting and unproven in front of a jury. Also—as in any class action case—establishing liability and damages on a classwide basis is rife with uncertainty, making settlement the more prudent course when a reasonable deal is available. In other words, a victory at trial might not yield superior results to this settlement.

By settling now, Defendants are agreeing to pay a Gross Settlement Amount of $3,725,000 and provide Settlement Class Members a remedy that is imminently available. *See* Fed. R. Civ. P. 23(e), 2018 Advisory Committee's Notes ("The relief that the settlement is expected to provide to class members is a central concern."). The amount being offered is reasonable and well within the range of recovery after considering the challenges to recovery at trial that could preclude the class from

collecting altogether. All of these considerations favor settlement approval; the Settlement Class Members will receive meaningful relief now—not years later .

### (iii) The Settlement provides for an effective distribution of proceeds to the Settlement Classes.

Here, the Settlement provides for an efficient and effective distribution of funds to Settlement Class Members. Members of the FLSA Collective will have 60 days to opt in either via regular mail or electronically to collect their settlement proceeds. They will also be given reminder notices 21- and 35-calendar days after the initial notices are issued. Members of the California Class and Aggrieved Employees do not have to do anything to collect their settlement proceeds. Thus, the claims process in this Settlement poses no artificial hurdles and should encourage class member participation in the Settlement. Accordingly, this factor weighs in favor of preliminary approval.

### (iv) The terms of the proposed award of attorneys' fees, including timing of payment, also support settlement approval.

Nothing about the negotiated attorney's fee award should detract from the fairness of the Settlement. The Parties (under Ms. Frank's supervision) finalized the material terms of the classwide relief under the Settlement before broaching the subject of attorney's fees—so there is no risk that the attorney's fee agreement impacted the nature of the class relief. Had the Parties not negotiated the fee, they would still have proceeded with this settlement and simply would have litigated the fee before this Court. In addition, the agreement was secured through arm's length negotiations under Ms. Frank's guidance, and indeed remains subject to this Court's approval once Plaintiffs file their supporting motion. *See* Fed. R. Civ. P. 23(h).

While the percentage sought by Plaintiffs' counsel (33% of the Gross Settlement Amount) is slightly higher than the benchmark in the Ninth Circuit (25%), Plaintiffs' counsel will request a modest multiplier at the appropriate time, considering

the risks, substantial work, contingent nature, and costs advanced by Plaintiffs' counsel to bring this Action to a successful resolution. *See e.g., Sadowska v. Volkswagen Grp. of Am.*, No. CV 11-00665, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) (approving negotiated fee award 1.37 times the lodestar and noting that "[m]ultipliers can range from 2 to 4 or even higher[]"). Plaintiffs' counsel will detail further when they file their Rule 23(h) motion for attorney's fees

### (v)    The Parties have no other agreements pertaining to the Settlement.

This Court must also evaluate any agreement made in connection with the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the Settlement Agreement before this Court is the only extant agreement. Thus, this factor weighs in favor of preliminary approval.

### The Settlement treats all Settlement Class Members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Here, based on the Parties' assessment of exposure, risk, strength of claims, and Defendants' defenses, the Parties believe that allocation between the Settlement Classes as discussed above is fair and reasonable. Additionally, the Parties proposed a fair method to distribute the settlement amounts to the Settlement Class Members based on the claims in the Action that applied to them, the number of workweeks in the position, and for individuals with potential FLSA and/or California claims, accounting for whether they worked full time or part time.[3] *See, e.g., Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account

---

[3] The allocation provides equitable distribution of the FLSA Net Settlement Amount for all members of the FLSA Settlement Collective. On the other hand, the allocation acknowledges that California state law provides for potential relief far in excess of the relief provided under the FLSA (including, for example, statutory penalties for meal and rest break violations), and thus California Settlement Class Members will receive additional compensation in exchange for the release of their California claims.

of [the] alleged misconduct"). The same is true for the releases provided by Settlement Class Members: all Settlement Class Members (except for the Named Plaintiffs who will sign a general release) will provide a release that is tailored to the claims that were raised or could have been raised based on the alleged facts pertaining to the class/collective group(s) to which they are a member. As a result, the Settlement treats all Settlement Class Members equitably, further supporting approval of the Settlement.

Finally, though Named Plaintiffs and Opt-In Plaintiffs will receive additional compensation commensurate with their participation in the Action, the extra payment is in recognition for the service they performed on behalf of the Settlement Classes and broader release of claims. The Ninth Circuit has approved such awards. *Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)).

For all these reasons, the proposed Settlement merits preliminary approval.

## V.    THE SETTLEMENT CLASSES MEET ALL THE REQUIREMENTS OF CONDITIONAL CERTIFICATION AND RULE 23

As stated above, a prerequisite for the Court's preliminary approval of a class/collective action settlement is that the proposed classes meet the requirements of conditional certification under the FLSA and Rule 23, as applicable.

### A.    Conditional certification under the FLSA has been satisfied.

For employees allegedly denied wages and overtime pay, the FLSA establishes an opt-in procedure. "Under the FLSA, 'one or more employees' may file a civil action—termed a collective action—on "behalf of himself or themselves and other employees similarly situated.'" *Hudson*, No. 3:18-cv-1371-GPC-KSC at *6 (citing 29 U.S.C. § 216(b)).

In determining whether an FLSA collective action may proceed, the Ninth Circuit in *Campbell* requires a two-step approach. First, plaintiffs move for preliminary certification, which involves disseminating notice to putative collective

members and advises them that "they must affirmatively opt in to participate in the litigation." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108-1109 (9th Cir. 2018). This dissemination of notice is "conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)." *Id*. at 1109. At this preliminary stage, this Court applies a "lenient" standard, "loosely akin to a plausibility standard, commensurate with the state of the proceedings." *Id*. Second, "[t]he employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id*.

According to *Campbell*, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent ***they share a similar issue of law or fact material to the disposition of their FLSA claims***." *Id*. at 1117 (emphasis added). "If plaintiff makes a plausible showing that such a similarity exists, the district court should grant first-stage certification." *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 5-cv-04456-PJH, 2018 WL 6727825, at *5 (N.D. Cal. Dec. 21, 2018).

Here, Named Plaintiffs, Opt-In Plaintiffs, and other Interpreters are "similarly situated" because they allegedly worked pre- and post-shift hours for which they were not paid, were not paid for rest breaks that were less than 20 minutes, and had to pay for internet expenses that they claim should have been borne by Defendants. Since Named Plaintiffs, Opt-In Plaintiffs, and other Interpreters are "similarly situated," conditional certification of the FLSA Collective should be granted.

### B.    The Rule 23 requirements are met.

Certification requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) be satisfied. The requirements of Rule 23(a) are: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). In addition, the Court must assure itself that the proposed forms of notice to the California Class are the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Here, the California Class meets the requirements under Rule 23.

### 1.    Rule 23(a)(1) – Numerosity

Numerosity requires that the proposed class be so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). No exact number is required, but courts have routinely found numerosity where the putative class contains 40 or more members. *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Here, according to Defendants, there are more than 1,500 individuals in the California Class, falling well within the acceptable scope of numerosity.

### 2.    Rule 23(a)(2) – Commonality

A plaintiff has met the commonality requirement for class certification if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996). The presence of one common issue whose resolution will affect all or a significant number of the putative class members suffices to satisfy this requirement. *Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 722 (9th Cir. 1999).

Named Plaintiffs allege that Defendants' uniform policies and actions deprived members of the California Class of minimum and overtime wages, compliant meal-and-rest periods, compliant wage statements, unreimbursed expenses, and timely payment of wages upon separation of employment. Plaintiffs take the position that common proof applicable to the California Class is based on Defendants' overtime, pay, meal period, and rest break policies. Thus, the California Class members share the same common questions regarding the legality of Defendants' actions.

### 3.    Rule 23(a)(3) – Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The representative plaintiffs' claims are "typical" if they are "reasonably co-extensive

with those of absent class members." *Hanlon*, 150 F.3d at 1020. The claims "need not be substantially identical." *Id.* However, class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." *In re Paxil Litigation*, 212 F.R.D. 539, 549 (C.D. Cal. 2003).

Here, typicality is easily met. Named Plaintiffs allege they and the California Class members, suffered violations of their legal rights, including not being paid overtime wages, not having compliant meal-and-rest breaks, not being reimbursed for business expenses, and more. Also, the law applicable to those facts is the same for the Named Plaintiffs and the California Class members. The claims Named Plaintiffs pursue on behalf of the California Class are based on the same legal theories and involve the same course of conduct that equally impacted all California Class members. Based on the foregoing, the typicality requirement is also satisfied.

### 4.    Rule 23(a)(4) – Adequacy

The final Rule 23(a) requirement requires (1) that the representative plaintiffs do not have conflicts of interest with the putative class; and (2) that plaintiffs are represented by qualified and competent counsel. *Staton*, 327 F.3d at 957. Here, Named Plaintiffs have adequately represented the California Class throughout this litigation. There are no intra-class conflicts as Named Plaintiffs and the California Class members share the same interest in holding Defendants accountable for the alleged violations. Also, Plaintiffs' counsel are highly experienced trial and class-action attorneys who have successfully handled complex class actions in both state and federal court. *See* Karnikian Decl., ¶ 8; Declaration of Jerusalem F. Beligan, ¶ 6; Declaration of Michael L. Fradin ¶ 13; and Declaration of James L. Simon ¶ 13. Therefore, adequacy is satisfied.

### 5.    Rule 23(b) – Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Hanlon*, 150 F.3d at 1022. Under Rule 23(b)(3): (1)

1  "the questions of law or fact common to class members predominate over any

2  questions affecting only individual members" and (2) "a class action is superior to

3  other available methods for fairly and efficiently adjudicating the controversy."

4  As alleged, the California Class members' claims depend on whether

5  Defendants paid for all hours worked, overtime pay, and provided compliant meal-

6  and-rest breaks. If found liable, those potential violations trigger derivative claims

7  including wage statement violations, waiting-time penalties and potential PAGA

8  violations. It is Plaintiffs' position that liability and damages can be resolved using

9  the same evidence for all California Class members, and thus this Action provides

10  the precise type of predominant questions that makes a classwide adjudication

11  worthwhile. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).

12  Superiority turns on "whether objectives of the particular class action procedure

13  will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. The main inquiry

14  in determining superiority is whether "classwide litigation of common issues will

15  reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace,*

16  *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, resolution of the issues through

17  individual actions is impracticable as the recovery for each class member would be

18  less, especially given the attorneys' fees, and costs that would be incurred by each

19  individual member. Accordingly, the class device is the superior method of

20  adjudicating the California Class members' claims.

21  **VI. CONCLUSION**

22  For the foregoing reasons, the Parties respectfully request this Court to grant

23  preliminary approval of the Settlement, conditionally certify the FLSA Collective,

24  and California Class, appoint Named Plaintiffs as the Class Representatives, appoint

25  their attorneys as Class Counsel, approve as to form the Notices and Opt-In Consent

26  Forms and set a Final Approval Hearing not less than 134 days after the date of the

27  order granting this Motion for Preliminary Approval.

28

1

2      DATED: June 8, 2024

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**KABATECK LLP**


By: /s/ *Brian S. Kabateck*
    Brian S. Kabateck (SBN 152054)
    bsk@kbklawyers.com
    Shant Karnikian (SBN 285048)
    sk@kbklawyers.com
    Jerusalem F. Beligan (SBN 211258)
    jfb@kbklawyers.com
    Sheri R. Lalehzarian (SBN 346917)
    sl@kbklawyers.com
    633 W. Fifth Street, Suite 3200
    Los Angeles, CA 90071
    Telephone: (213) 217-5000

**SIMON LAW CO.**


By: /s/ *James L. Simon*
    James L. Simon (*pro hac vice*)
    james@simonsayspay.com
    11 ½ N. Franklin Street
    Chagrin Falls, Ohio 44022
    Telephone: (216) 216-8696

By: /s/ *Michael L. Fradin*
    Michael L. Fradin (*pro hac vice*)
    mike@fradinlaw.com
    8401 Crawford Ave., Ste. 104
    Skokie, IL 60076
    Telephone: 847-986-5889

*Attorneys for Plaintiffs and the Putative Classes*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT