1
2
3
4                  UNITED STATES DISTRICT COURT
5                NORTHERN DISTRICT OF CALIFORNIA
6

7   SHARON OLIVEIRA, et al.,              Case No.  5:22-cv-02410-PCP
8              Plaintiffs,
                                          **ORDER GRANTING MOTION FOR**
9          v.                             **FINAL APPROVAL OF SETTLEMENT**
                                          **AND GRANTING IN PART MOTION**
10  LANGUAGE LINE SERVICES, INC., et      **FOR ATTORNEYS' FEES, COSTS,**
    al.,                                  **AND SERVICE AWARDS**
11             Defendants.
                                          Re: Dkt. Nos. 75, 76
12

13      Before the Court are plaintiffs' unopposed motions for final settlement approval and for

14  attorneys' fees, costs, and service awards. For the following reasons, the Court grants the motion

15  for final approval and grants in part the motion for fees, costs, and service awards.

16                            **BACKGROUND**

17      This is a collective and class action employment lawsuit filed by named plaintiffs Sharon

18  Oliveira and Simone Franco de Andrade Boyce against two California-based companies,

19  defendants On Line Interpreters, Inc. (OLI) and Language Line Services, Inc. (LLS). Plaintiffs

20  were full-time interpreters for defendants, which offer interpreter services to consumers and hire

21  interpreters throughout the United States as nonexempt employees who are paid an hourly wage

22  and entitled to overtime pay. Oliveira was employed in California from November 21, 2018 to

23  May 31, 2019 and then in Ohio from June 1, 2019 to November 30, 2020. Boyce was employed in

24  California from March 8, 2020 to December 17, 2021.[1]

25      Plaintiffs allege that defendants failed to pay them minimum and overtime wages earned,

26  failed to provide compliant rest and meal breaks, failed to provide accurate wage statements, failed

27  ─────────────────────

28  [1] Named plaintiffs Oliveira and Boyce initially filed separate actions in the Northern District of
    California. The two actions were related in December 2022.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    to reasonably reimburse employees for business expenses, required impermissible "off-the-clock"

2    work, and engaged in unfair business practices. In their operative January 2023 complaint,

3    plaintiffs asserted violations of the federal Fair Labor Standards Act (FLSA), various California

4    labor laws, California's Private Attorneys General Act (PAGA), and the Ohio Minimum Fair

5    Wage Standards Act.

6         After the operative complaint was filed, the parties engaged in substantial discovery and

7    two rounds of mediation before reaching the proposed settlement. The parties initially engaged in

8    informal discovery, and defendants produced their policies and procedures as well as timekeeping

9    and payroll records. Plaintiffs provided these materials to their retained experts to estimate

10   damages for the class/collective members. The parties participated in a full day of mediation on

11   April 10, 2023, but the case did not settle. The parties thereafter engaged in formal discovery from

12   May to December 2023. The parties' discovery efforts involved an in-person deposition as well as

13   written discovery, including requests for production, form and special interrogatories, and requests

14   for admission. Soon after, the parties agreed to participate in a second mediation on February 17,

15   2024. At the conclusion of this mediation session, the parties agreed upon the proposed settlement,

16   which was initially presented as a mediator's proposal.

17        On June 12, 2024, the parties moved for preliminary approval of a FLSA collective and

18   class action settlement, conditional certification of the settlement classes, appointment of class

19   representatives and counsel, approval of class notices, and setting of a final approval hearing. The

20   Court continued the initial hearing date and ordered the parties to provide supplemental briefing

21   addressing several issues. Plaintiffs submitted their supplemental brief and supporting evidence on

22   July 29, 2024, the Court heard argument on the motion for preliminary approval on August 1,

23   2024, and the Court granted preliminary approval on August 2, 2024.

24        As part of the settlement approval process, plaintiffs requested certification of three

25   classes: (1) the FLSA Collective, which includes all current and former OLI or LLS employee

26   interpreters in the United States from April 18, 2020 to April 1, 2024, and those who opted in after

27   notice was issued; (2) the California Class, which includes all current and former OLI or LLS

28   employee interpreters in California from April 18, 2018 to April 1, 2024, and those who did not

opt out after notice was issued; and (3) the Aggrieved Employees subclass which includes all current and former OLI or LLS employee interpreters in California who were nonexempt or hourly-paid employees from November 16, 2021 through April 1, 2024. Under the terms of the settlement, defendants will contribute a total gross amount of $3,725,000. The parties propose allocating $25,000 of that amount to service awards to the named plaintiffs and certain individuals who have already opted into the FLSA collective action; $800,500 to the FLSA Collective; $1,332,833.33 to the California Class; $56,250 to the Aggrieved Employees entitled to a portion of the PAGA recovery; $168,750 to the Labor & Workforce Development Agency (LWDA) for its portion of the PAGA recovery; $1,241,666.67 to attorneys' fees and $50,000 to attorneys' expenses; and $50,000 to settlement administration costs.

The settlement includes a release of claims by members of the California Class and FLSA Collective. Individuals who opt into the FLSA Collective are required to release all FLSA claims that were or could have been pleaded based on the factual allegations in the first amended complaint or any prior complaint. Individuals who do not opt out of the California Class are required to release all federal and state law claims that were or could have been pleaded based on the factual allegations in the first amended complaint or any prior complaint. The Aggrieved Employees are required to release all claims under PAGA for all California Labor Code violations that were pleaded in the first amended complaint or any prior complaint.

After preliminary approval, the parties provided notice of the terms of the settlement in accordance with the preliminary approval order. Notice was provided by mail to 10,792 of the 10,959 California Class and FLSA Collective members—more than 98 percent. The deadline to submit requests for exclusion, disputes, and objections was October 26, 2024, and the deadline to submit an FLSA Collective opt-in form was November 12, 2024. As of November 27, 2024, out of the 10,608 FLSA Collective members, 4,531 people opted in—a 42.7% participation rate. Out of the 1,922 California Settlement Class members, no class member objected and only 6 people opted out—a participation rate of 99.7%.

On November 27, 2024, plaintiffs moved for final approval of the FLSA, class action, and representative PAGA action settlement; attorneys' fees and costs; class representative service

3

awards; and settlement administrator costs. The Court heard plaintiffs' motions on January 9, 2024.

## LEGAL STANDARDS

### I.     Certification of the California Settlement Class and FLSA Collective

The Court must first confirm its prior determination that the requirements for certification of the California Settlement Class under Federal Rule of Civil Procedure 23 and the FLSA Collective under U.S.C. § 216(b) are met. Because a PAGA claim is a law enforcement action brought by plaintiffs acting as the state's designated proxy, it is not "a collection of individual claims for relief" and therefore need not meet standards for class certification. *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 855 (9th Cir. 2020); *see also Rodriguez v. Belfor USA Grp., Inc.*, No. 22-CV-02071-VKD, 2024 WL 3012798, at *6 (N.D. Cal. June 13, 2024).

### A.     Rule 23

A class action may be certified for settlement only if it meets the requirements of Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The parties seek certification under Rule 23(b)(3), which requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class meets the requirements of Rule 23(b), the court should consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Rule 23's requirements "demand undiluted, even heightened, attention" when a proposed class is to be certified only for the purposes of settlement. *Amchem Prods.*, 521 U.S. at 620. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

### B.    29 U.S.C. § 216(b)

Under the FLSA, a collective can be conditionally certified if members are "similarly situated," 29 U.S.C. § 216, meaning that "they share a similar issue of law or fact material to the disposition of their FLSA claims," *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018). *See also De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *7 (N.D. Cal. Mar. 31, 2020). Conditional certification under FLSA "imposes a lower bar than Rule 23." *Campbell*, 903 F.3d at 1112.

## II.    Final settlement approval

### A.    Rule 23

"The claims, issues, or defenses of a certified class may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. The district court must balance several factors—the "*Churchill* factors"—in this analysis:

5

1
2
3
4

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

5   *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

6       Settlements that occur before formal class certification require a higher standard of

7   fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). The court must

8   ensure that "the settlement is not the product of collusion among the negotiating parties." *In re*

9   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (cleaned up). Possible

10  signs of collusion include a "clear sailing provision," a revisionary arrangement, and unreasonable

11  attorneys' fees. *Id.*

12      **B.    FLSA**

13      FLSA collective settlements similarly require a court's determination that "the settlement

14  is a fair and reasonable resolution of a bona fide dispute." *Nen Thio v. Genji, LLC.*, 14 F. Supp. 3d

15  1324, 1333 (N.D. Cal. Aug. 7, 2014). "'[T]he factors that courts consider when evaluating a

16  collective action settlement are essentially the same as those that courts consider when evaluating

17  a [class action] settlement' under Rule 23(e)." *De Leon*, 2020 WL 1531331, at *7 (quoting *Otey v.*

18  *CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *11 (N.D. Cal. Apr. 15, 2014)).

19      "A bona fide dispute exists when there are legitimate questions about the existence and

20  extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-cv-4080-

21  KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez v. Fallanghina, LLC*,

22  No. 16-cv-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017)). Thus, "there must be

23  some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA

24  claims." *Heath v. Google LLC*, No. 15-cv-01824-BLF, 2019 WL 3842075, at *4 (N.D. Cal. Aug.

25  15, 2019).

26      **C.    PAGA**

27      Court approval is also required for settlement of a PAGA claim. *Rodriguez*, 2024 WL

28  3012798, at *6; *Kulik v. NMCI Med. Clinic Inc.*, No. 21-CV-03495-BLF, 2023 WL 2503539, at *3

6

United States District Court
Northern District of California

(N.D. Cal. Mar. 13, 2023). Although "court approval of PAGA settlements is statutorily required, PAGA does not provide express guidance about the scope or nature of judicial review." *Rodriguez*, 2024 WL 3012798, at *6. Generally, courts consider whether a PAGA settlement meets the requirements set out in the statute and apply "a Rule 23-like standard" to determine whether the settlement is "fundamentally fair, reasonable, and adequate." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (cleaned up); *see also Rodriguez*, 2024 WL 3012798, at *6 (explaining that in evaluating a PAGA claim, courts draw "on factors utilized by the Ninth Circuit to evaluate whether a class action settlement is fundamentally fair, adequate, and reasonable"). "These factors are evaluated in light of PAGA's public policy goals of benefiting the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Rodriguez*, 2024 WL 3012798, at *2 (cleaned up).

### III.    Attorneys' fees and costs, service awards, and administration costs

#### A.    Attorneys' fees and costs

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, ... courts have an independent obligation to ensure that the award, like the settlement itself is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (internal citation omitted). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorneys' fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," both the Ninth Circuit and the California Supreme Court permit courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.*; *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (Cal. 2016).

In the Ninth Circuit, the well-established "benchmark for an attorneys' fee award in a successful class action is twenty-five percent of the entire common fund." *Williams v. MGM-*

1  *Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally

2  start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

7  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino*

8  *v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). Where state law provides the basis

9  for awarding fees, courts in the Ninth Circuit generally apply state law in making that

10 determination. *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707 (S.D.

11 Cal. Sept. 28, 2017); *see Mangold v. Cal. Pub. Utils, Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

12 In California state court, the typical award of attorneys' fees is approximately one third of the

13 common fund. *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (Cal. Ct. App. 2008)

14 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is

15 used, fee awards in class actions average around one-third of the recovery."); *Smith v. CRST Van*

16 *Expedited, Inc.*, No. 10-CV-1116-IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013)

17 ("Under the percentage method, California has recognized that most fee awards based on either a

18 lodestar or percentage calculation are 33 percent."); *Beaver*, 2017 WL 4310707, at *9.

19        In common fund cases, the lodestar calculation can provide a useful cross-check on the

20 reasonableness of a percentage award. *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is

21 calculated by multiplying the number of hours the prevailing party reasonably expended on the

22 litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and

23 for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Where the attorneys'

24 investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation

25 may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050.

26 "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when

27 litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the

28

United States District Court
Northern District of California

percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

Regardless of whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

In common fund cases, attorneys are also entitled to recover the reasonable expenses of acquiring the fund. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). To recover such expenses, the attorneys should provide an itemized list of their expenses by category with the total amount advanced for each category so that the Court can assess whether the expenses were reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-5778, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-5778, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

**B.     Service awards**

"[Incentive or service] awards are discretionary ... and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The court considers:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32 (citations omitted). "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

**ANALYSIS**

**I.     Class certification**

As the Court previously concluded, the California Settlement Class and the FLSA Collective meet the requirements for certification.

**A.      Rule 23**

**1.      Rule 23(a)**

As explained above, a class action may be certified only if it meets the requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). The California Settlement Class here does so.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, the numerosity requirement is met where the plaintiff class contains forty or more members. *Corley v. Google, Inc.*, 316 F.R.D. 277, 290 (N.D. Cal. 2016). The California Settlement Class contains 1,916 members. Accordingly, the numerosity requirement is met.

The second requirement of Rule 23(a) is that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, class members share common questions of law and fact pertaining to whether defendants violated California wage and hour laws by failing to pay them regular and overtime wages earned, provide compliant meal and rest periods, provide compliant wage statements, reimburse expenses, and timely pay wages upon separation of employment. Accordingly, the commonality requirement is met.

The typicality requirement is met when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (cleaned up). Here, the claims of the named plaintiffs are typical of the class, arising from the defendants' same course of conduct.

Finally, the class representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that (1) named plaintiffs and their counsel have no conflicts of interest with other class members and (2) named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943. Here, there are no known conflicts of interest between the named plaintiffs and class counsel, on the one hand, and the proposed class members, on the other. Class counsel have vigorously prosecuted the action, including by filing an amended complaint, filing a motion for

United States District Court
Northern District of California

United States District Court
Northern District of California

1  preliminary approval, retaining an expert to support preliminary approval of the settlement, and

2  demonstrating a willingness to take the case to trial if necessary. Further, the named plaintiffs have

3  actively participated in the litigation since its inception. Accordingly, the representation of the

4  class by class counsel and the named plaintiffs is adequate.

5           **2.       Rule 23(b)(3)**

6         Certification also requires that the action be "maintainable under Rule 23(b)(1), (2), or

7  (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Here, the parties seek certification under Rule

8  23(b)(3), which imposes two further requirements: predominance and superiority.

9         Predominance requires that "that the questions of law or fact common to class members

10  predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

11  Plaintiffs contend that the liability questions in this case can be resolved using the same evidence

12  for all class members because the common legal and factual issues turn on an alleged common

13  course of conduct by the defendants. Accordingly, plaintiffs have shown predominance.

14         Superiority "assure[s] that the class action is the most efficient and effective means of

15  resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th

16  Cir. 2010) (cleaned up). This is generally the case where there is a significant disparity between

17  litigation costs and the recovery sought, such that a class action will allow individuals to pool

18  claims that would be uneconomical individually. Here, the average payout to members of the

19  California Settlement Class is $287.12, while class counsel's litigation costs incurred to date are

20  roughly $40,000. If class members had pursued their own actions, these litigation costs would

21  significantly exceed their recovery. Accordingly, pursuing the claims in this case as a class action

22  is superior to other means of adjudicating the dispute.

23                                        \*\*\*

24         Because the requirements of Rules 23(a) and 23(b)(3) are satisfied, the Court confirms its

25  grant of class certification for settlement purposes only.

26           **B.      FLSA**

27         The FLSA requires that collective members be "similarly situated." 29 U.S.C. § 216. Here,

28  the FLSA Collective members all allegedly worked pre- and post-shift hours for which they were

1   not paid, were not paid for rest breaks that were less than 20 minutes, had to pay for internet

2   expenses that they claim should have been borne by the defendants, and are pursuing claims for

3   unpaid wages under the FLSA. Accordingly, the FLSA Collective members are similarly situated,

4   and the Court confirms its certification of the FLSA Collective for purposes of settlement only.

5   **II.     Final settlement approval**

6           The Court considers "essentially the same" factors in evaluating settlement of a class

7   action, an FLSA collective action, and a PAGA action. *De Leon*, 2020 WL 1531331, at *7;

8   *Rodriguez*, 2024 WL 3012798, at *6. Accordingly, the settlement of the class, FLSA, and PAGA

9   claims will be considered together.

10          **A.      Adequacy of notice**

11          The court must "direct notice [of a proposed class settlement] in a reasonable manner to all

12  class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties

13  must provide class members with "the best notice that is practicable under the circumstances,

14  including individual notice to all members who can be identified through reasonable effort." Fed.

15  R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that

16  does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of

17  City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982). To satisfy Rule 23(e)(1), settlement

18  notices must "present information about a proposed settlement neutrally, simply, and

19  understandably." *Rodriguez*, 563 F.3d at 962. "Notice is satisfactory if it 'generally describes the

20  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and

21  to come forward and be heard.'" *Id.* (quoting *Churchill*, 361 F.3d at 575).

22          The court approved the plaintiffs' plan for providing notice to the class when it granted

23  preliminary approval. Plaintiffs now provide a declaration from Laura Singh, a case manager at

24  the settlement administrator, documenting the administrator's implementation of that plan. The

25  declaration shows that the settlement administrator complied with the notice plan and successfully

26  provided notice by mail to 10,792 of the 10,959 Class/Collective members—more than 98 percent.

27  The Court is satisfied that the notice that class members received complies with Federal Rule of

28  Civil Procedure 23 and constitutional due process requirements.

United States District Court
Northern District of California

**B.      Fairness, adequacy, and reasonableness**

As discussed above, the Court must determine whether the settlement is fair, reasonable, and adequate. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). During the preliminary approval stage, the Court found that the settlement met that standard. Application of the *Churchill* factors following notice to the class confirms that the settlement is fair, reasonable, and adequate.

Under the first and second factors, the Court considers (1) the strength of the plaintiffs' case, weighing the likelihood of success on the merits and the range of possible recovery; and (2) the risk, expense, complexity, and duration of further litigation. The plaintiffs recognize the inherent risks of going to trial, especially as they have faced strong opposition from defendants. Continued litigation would likely require substantial additional discovery, including depositions, and pre-trial motions, which would be expensive and time-consuming. Appeals could be expected to further delay any recovery by class members. Proceeding with litigation would thus likely be risky, protracted, and costly. Accordingly, the first two factors weigh in favor of final approval.

Under the third factor, the Court considers the risk of maintaining class action status throughout the trial. At the time that the parties agreed to the proposed settlement, the Court had not yet granted class certification, so the plaintiffs faced the risks of either failing to certify any class or failing to maintain class certification through trial. These risks, measured against the certainty of recovery under the settlement, weigh in favor of final approval.

The fourth factor is the amount offered in settlement. Under the terms of the settlement, defendants will contribute a total gross amount of $3,725,000. California Settlement Class members, FLSA Collective members, and the PAGA representative group members will receive average awards of $287.12, $471.69, and $12.12, respectively, with some awards amounting to as much as $5,813.11, $7,296.85, and $189.77, respectively. Some California Class and FLSA Collective members will receive payments from more than one category of settlement funds. Those who belong to all three classes could receive an average payment of $2,161.15.

Defendants faced a maximum possible FLSA exposure of $3,545,665, California exposure of $6,056,203, and PAGA exposure of $5,699,059. But defendants strongly disputed that exposure, contesting whether there was any compensable off-the-clock time, any penalties owed

for missed breaks and meal periods, and whether penalties, liquidated damages, and pre-judgment interest could be stacked. Defendants argued that the "gap time" claims of the FLSA Collective for minimum wages were nonexistent and had little value, if any. They argued that any time worked off-the-clock was de minimis and that the named plaintiffs' accounts of such time would not be supported by other interpreters. They argued that unpaid breaks about which named plaintiffs complained were subject to various defenses under the FLSA and were not prohibited by California law. Defendants also argued that due to the high rate of pay for interpreters, any failure to reimburse for expenses would not bring interpreters below the minimum wage in any workweek, and thus would never violate the FLSA. Defendants further argued that any required expense reimbursement under California law was much less than what was alleged by the named plaintiffs.

Under these circumstances, the amount offered in settlement—just over 24% of defendants' estimated maximum potential exposure—represents a reasonable compromise between the potential recovery at trial and the risks of continuing to litigate plaintiffs' claims in the face of defendants' strong opposition. The amount offered in settlement thus weighs in favor of final approval.

Under the fifth factor, courts consider the extent of discovery completed and the stage of the proceedings. In this case, the parties' settlement was reached after some informal and formal discovery, including written discovery and a deposition. The Court is satisfied that, at the time of settlement, the parties were sufficiently familiar with the strengths and weaknesses of the case to make informed decisions. This factor thus weighs in favor of final approval.

The sixth factor is the experience and views of counsel. Class counsel have extensive experience litigating similar cases. They have demonstrated a thorough understanding of the strengths and weaknesses of this case and concluded that the settlement is fair, adequate, and reasonable. This factor thus also favors final approval.

The seventh factor—the presence of a governmental participant—is neutral because there is no governmental participant in this case.

Under the eighth factor, the court considers the reaction of the class members to the

United States District Court
Northern District of California

1   proposed settlement. The overall reaction of the class here is overwhelmingly positive. Notice was

2   given to 10,792 class members and not a single member timely objected, only 6 California

3   Settlement Class members requested to be excluded, and 42.7% of the FLSA Collective opted in.

4   The high opt-in rate for the FLSA Collective is particularly notable. Accordingly, this factor

5   strongly favors final approval.

6           Because this settlement was reached prior to class certification, the Court must also ensure

7   that it is "not the product of collusion among the negotiating parties." *In re Bluetooth*, 654 F.3d at

8   947 (cleaned up). This settlement does not contain a "clear sailing provision," a revisionary

9   arrangement, or unreasonable attorneys' fees, all of which can be warning signs of collusion. *Id.*

10  The settlement was reached only after confirmatory discovery, expert analyses, and two arm's

11  length mediations with experienced mediators. *See G. F. v. Contra Costa Cnty.*, No. 13-03667-

12  MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an

13  experienced mediator in the settlement process confirms that the settlement is non-collusive").

14  Accordingly, none of the *Bluetooth* factors are present, and the settlement does not raise an

15  inference of collusion on any other ground.

16          With respect to the settlement of the FLSA claims, the Court finds that there was and

17  continues to be a bona fide dispute in this case because the defendant contests FLSA liability.

18          Finally, the Court finds that PAGA's requirement that 75% of civil penalties recovered be

19  allocated to the LWDA and 25% to aggrieved employees is met.

20                                                      ***

21          After considering the record as a whole, guided by the *Churchill* factors, the Court finds

22  that notice of the proposed settlement was adequate; the settlement is not the result of collusion;

23  the settlement is a fair, adequate, and reasonable resolution of a bona fide dispute; and the

24  settlement meets PAGA's statutory requirements. Accordingly, the Court grants final approval of

25  the settlement.

26

27

28

1    **III.    Attorneys' fees, costs, and service awards**

2        **A.    Attorneys' fees and costs**

3        Class counsel seeks an award of attorneys' fees in the amount of $1,241,666.67, which is

4    one-third of the total settlement value and reflects a 2.2 multiplier of their $558,789.50 lodestar.

5        Plaintiffs maintain that their requested fee award is appropriate under either the percentage

6    of recovery or the lodestar method of calculation. They contend that their request under the

7    percentage method is within the range of reasonableness when considering the Ninth Circuit's

8    benchmark of 25%; aligns with comparable cases within the Ninth Circuit; and is consistent with

9    the California norm of 33%, which they contend should govern the calculation here because state

10   law claims predominate. They argue that the requested fee award falls within the lower range of

11   the 30–40% typical of wage and hour class actions resulting in settlement funds of less than $10

12   million. Class counsel further emphasizes the significant monetary and non-monetary value of the

13   settlement to the class; the contingent risk assumed by counsel in representing plaintiffs in this

14   litigation; the skill and experience of counsel; and counsel's substantial hours devoted to

15   prosecuting this action.

16       After reviewing the results achieved for the class and the risk counsel incurred in pursuing

17   class members' claims on a contingent basis, the Court concludes that an award of 30% of the

18   common fund—$1,117,500—is reasonable. This amount falls just above the Ninth Circuit

19   benchmark and just below the California norm, and thus appropriately reflects the settlement's

20   resolution of both federal and state claims. It also reflects the strong results achieved for members

21   of the California Class and FLSA Collective. In particular, the strong response of FLSA Collective

22   members to the proposed settlement, as reflected in the high opt-in rate, justifies an award falling

23   above the Ninth Circuit's 25% benchmark.[2]

24       A lodestar cross-check confirms the reasonableness of an award of 30% of the common

25   fund to class counsel. As stated above, counsel's lodestar is $558,789.50. Although the

---

[2] To be certain, the settlement administrator's impressive success in notifying members of the California Class and FLSA Collective may be primarily responsible for the high opt-in rate. But class counsel selected that settlement administrator and thus deserves some credit as well.

United States District Court
Northern District of California

documentation submitted in advance of the hearing in support of counsel's request for attorneys' fees was deficient in some respects, counsel addressed those deficiencies at the hearing and the Court can now conclude that the hourly rates used by class counsel in their lodestar calculation, which have been approved by multiple other California courts, reflect the reasonable commercial value of their work.[3] The Court also concludes that the number of hours expended by counsel on this litigation was reasonable.[4]

Awarding class counsel 30% of the common fund reflects a multiplier of approximately 2.0 on their $558,789.50 lodestar. The Ninth Circuit has recognized that multipliers generally range from 1 to 4. *Vizcaino*, 290 F.3d at 1051 n.6. District courts within the Ninth Circuit commonly apply multipliers in that range in California wage and hour class actions. *See, e.g.*, *Kulik*, 2023 WL 2503539 (applying a multiplier of 1.83); *Uschold v. NSMG Shared Servs., LLC*, No. 18-cv-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (applying a multiplier of 4); *De Leon*, 2020 WL 1531331, at *18 (applying a multiplier of 1.09); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) (applying a multiplier of 2.0). Given the results achieved for the class and the risk counsel faced, applying a multiplier of 2.0 to counsel's lodestar is reasonable here.

Class counsel also seeks reimbursement of up to $50,000 in litigation costs. As of the of filing its motion for final approval, class counsel had incurred approximately $39,841.57 in costs, including court fees, mediation fees, legal research charges, and expert fees. At the time, class counsel anticipated additional expenses related to travel to the final approval hearing and additional settlement administration costs. The Court has reviewed counsel's expenses and finds them reasonable. Therefore, the Court grants the request for reimbursement of costs up to $50,000.

---

[3] As noted at the hearing, counsel seeking an award of fees based on a lodestar analysis should provide detailed evidence justifying each attorney's hourly rate, including their years of experience and prior relevant litigation. The Declaration of Shant A. Karnikian submitted in support of counsel's motion for attorneys' fees in this case provides a good example of the kind of detail the Court expects. *See* Dkt. 75-2.

[4] The Court noted deficiencies in one attorney's documentation of their hours at the hearing, but that attorney addressed the Court's concerns. Again, Mr. Karnikian's declaration, which breaks down his firm's work on this litigation by attorney, task, and day, provides an example of the kind of documentation the Court wants to see in any fee application.

United States District Court
Northern District of California

1   To the extent counsel seeks reimbursement of costs not documented in its court filings, counsel

2   must provide the settlement administrator with adequate proof that those costs were incurred.

3       **B.    Service awards**

4       Named plaintiffs Sharon Oliveira and Simone Franco de Andrade Boyce each seek a

5   service award of $8,000. The six early opt-in plaintiffs request service awards of $1,500.

6       Service awards in the Northern District of California commonly range from $2,000 to

7   $10,000. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). $5,000 is

8   presumptively reasonable. *Id.*; *Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL

9   1531171, at *12 (N.D. Cal. Apr. 19, 2021). Higher awards are more common in cases involving

10  much larger settlement amounts. *Bellinghausen*, 306 F.R.D. at 267; *see e.g., Glass v. UBS Fin.*

11  *Servs.,* No. C–06–4068 MMC, 2007 WL 221862, at *16–17 (N.D.Cal. Jan. 26, 2007) (approving a

12  $25,000 incentive award to four named plaintiffs in connection with a $45 million

13  settlement); *Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving

14  $50,000 award in connection with a $76,723,213.26 settlement).

15      Plaintiffs contend that the named plaintiffs should receive larger-than-average service

16  awards because they spent "significant time and effort" assisting litigation. Their assistance

17  included "searching their personal files for copies of their employee handbooks, payment plans,

18  emails, pay and time records," being interviewed by counsel multiple times, keeping in "constant

19  communication" throughout litigation, and assisting counsel in preparation for mediations. Both

20  named plaintiffs responded to written discovery at the request of defendants, both prepared for

21  depositions, and one sat for a deposition. They also incurred the reputational risks inherent in

22  bringing the action.

23      The assistance that the named plaintiffs contributed to this litigation is precisely the kind of

24  work on behalf of the class that service awards are meant to compensate. But it does not reach the

25  level that would justify departing from the standard award of $5,000. Higher awards are typically

26  warranted when class representatives spend significantly more time working on the litigation than

27  the named plaintiffs here did. *See, e.g.*, *Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-

28  02276-JST, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021) (approving a $20,000 service awards for

United States District Court
Northern District of California

the named plaintiffs where they each spent hundreds of hours on the litigation); *Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) (approving a $15,000 service where the named plaintiff spent over 270 hours on the litigation over a six-year period); *Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (approving a $15,000 service award where the named plaintiff did "well over" 80 hours of work on the case).

Accordingly, the Court will approve service awards of $5,000 to each of the named plaintiffs.

Plaintiffs contend that the opt-in plaintiffs should receive service awards of $1,500 because they took a risk by putting their names on this lawsuit at a time when others were not willing to do so and their participation was a catalyst to early resolution of this case. Further, their discussions with plaintiffs' counsel allowed counsel to fact-check assertions made by defendants and to identify the strengths and weaknesses of the case, further facilitating settlement.

In light of the risks the opt-in plaintiffs took and their contributions to this litigation, the Court grants service awards of $1,500 to each of the opt-in plaintiffs.

### C.    Settlement administrator costs

Plaintiffs also request settlement administration fees in the amount of $50,000 for the settlement administrator CPT Group. The Court finds this amount reasonable and approves the request.

### CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. The Court confirms its conditional certification of the California Settlement Class and FLSA Collective for settlement purposes only.

2. The Court grants final approval of the parties' settlement agreement.

3. The Court awards class counsel $1,117,500 in attorneys' fees.

4. The Court awards class counsel costs of up to $50,000.

5. The Court awards named plaintiffs Sharon Oliveira and Simone Franco de Andrade Boyce each a service award of $5,000, and awards each of the six early opt-in plaintiffs a service award of $1,500.

1       7. The Court grants the request for settlement administration costs up to $50,000.

2       8. The individuals who requested to opt out of the California Class are excluded from the

3  Class.

4       9. The individuals who did not opt into the FLSA Settlement are excluded from the

5  Collective.

6       **IT IS SO ORDERED.**

7  Dated: February 24, 2025

8

9  _____

10 P. Casey Pitts
   United States District Judge